# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**STEVE ZIMMER PAIGE**<br><br>   Debtor.<br><br>**GARY E. JUBBER, Liquidating Trustee, and CONSUMERINFO.COM, INC.,**<br><br>   Plaintiffs/Appellees,<br><br>vs.<br><br>**SEARCH MARKET DIRECT, INC., et al.,**<br><br>   Defendants/Appellants. | **MEMORANDUM DECISION AND ORDER DENYING STAY PENDING APPEAL**<br><br>Case No.  2:09MC869DAK<br><br>Judge Dale A. Kimball |

      This matter is before the court on Search Market Direct, Inc. and Stephen S. May's (collectively "SMDI") Emergency Motion for Temporary Stay and Emergency Motion for Stay Pending Appeal pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure.  The Liquidating Trustee, Gary E. Jubber ("Trustee"), and ConsumerInfo.com, Inc. ("ConsumerInfo") filed a joint opposition to the motions.  The court, therefore, will refer to the arguments jointly submitted from those parties as arguments of the Trustee.  The court held a hearing on the motions on October 14, 2009.  At the hearing, SMDI was represented by Adam S. Affleck, Michael Zundel, and Andrew B. Clawson, Trustee Gary Jubber was represented by Douglas J. Payne, and ConsumerInfo.com was represented by Robert E. Richards and Michael R. Johnson.

The court took the motion under advisement.  After carefully considering the memoranda, exhibits, and declarations submitted by the parties, as well as the facts and law relevant to the matter, the court enters the following Memorandum Decision and Order.

## BACKGROUND

The debtor, Steve Zimmer Paige, purchased the rights to the Domain Name "Freecreditscore.com."  On September 16, 2005, Paige filed Chapter 7 bankruptcy.  The bankruptcy court found that Paige was the beneficial and legal owner of the Domain Name on the date he filed bankruptcy.  After filing for bankruptcy, Paige's interest in the Domain Name was transferred to another entity and eventually transferred to SMDI in January 2006.  Upon learning of the Domain Name, Jubber, the bankruptcy trustee, filed an adversary action against SMDI to have the Domain Name returned to the bankruptcy estate.  But the bankruptcy estate had no money to fund the adversary proceeding.

Because the Domain Name was a valuable asset to the estate, the Trustee entered into an Asset Purchase Agreement with ConsumerInfo, which was approved by the bankruptcy court in a Sale Order.  Under the APA, ConsumerInfo paid approximately $2 million to the estate and agreed to fund the litigation expenses of the adversary proceeding for an interest in the adversary proceeding, the conveyance of the Domain Name if the bankruptcy court ruled in its and the Trustee's favor, and a portion of the monetary relief recovered under claims seeking monetary relief in addition to a return of the Domain Name.  All of the unsecured creditors were paid with the $2 million except for unsecured claims of ConsumerInfo, which it agreed to subordinate.  But the APA provided that the monetary relief obtained in the adversary proceeding could be used to pay the subordinated claims.  The APA provided that any monetary relief obtained in the

adversary proceeding would be split 75/25 between the estate and ConsumerInfo.  SMDI did not appeal the Sale Order issued by the bankruptcy court.  The Joint Plan approved by the bankruptcy court was predicated on the adversary proceeding going forward.

The adversary proceeding was tried before the bankruptcy court over the course of nineteen days.  After if concluded, the bankruptcy court issued a sixty-four page Memorandum Decision.  In the decision, the court concluded that the transfers of the Domain Name were *void ab initio* and awarded the Domain Name to the estate on four different grounds.  The court did not award damages to the plaintiffs on Counts V and IX and it did not address damages under Count VI because it found that the transfers of the Domain Name were not voluntary transfers by the debtor.

Pursuant to applicable bankruptcy rules, SMDI first brought a motion for stay pending appeal in the bankruptcy court.  The bankruptcy court held a hearing on the motion and issued a lengthy ruling from the bench.  Although the bankruptcy court denied a permanent stay pending appeal, it granted SMDI a temporary stay to allow SMDI to bring the present motion for a permanent stay in this court.

## DISCUSSION

SMDI moves for a permanent stay of the bankruptcy court's judgment pending appeal or, in the alternative, for a temporary stay allowing it to petition the Tenth Circuit for a writ of mandamus.  SMDI brings the motion pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure.  Under Rule 8005, if a motion for a stay of the judgment pending appeal is presented to the bankruptcy court and the bankruptcy court denies the relief, in part or in whole, as in this case, a party may petition the district court for relief.  Fed. R. Bankr. P. 8005.  But the motion to

the district court must then "show why the relief, modification, or termination was not obtained from the bankruptcy judge." *Id.* Rule 8005 further provides that if relief is granted, it may be conditioned on the filing of a bond or other appropriate security. *Id.*

## I.  Standard of Review

As an initial matter, the parties dispute whether the proper standard of review for this court to employ is *de novo* or an abuse of discretion. SMDI asserts that this court should look at its motion with fresh eyes, whereas the Trustee contends that this court should give deference to the bankruptcy court. SMDI relies on the Tenth Circuit Bankruptcy Appellate Panel ("BAP") decision in *Lang v. Lang (In re Lang)*, 305 B.R. 905 (10th Cir. BAP 2004). In *Lang*, the BAP twice stated that it reviews the bankruptcy court's ruling "refusing to grant a stay pending appeal for abuse of discretion." *Id*. at 908 (citing Fed. R. Civ. P. 62(b) (stay pending appeal a matter left to the discretion of the court)). The court's second reference to the standard again stated that "[t]he decision of whether to grant a stay pending appeal is left to the discretion of the bankruptcy court. We review this decision for an abuse of discretion." *Id.* at 911. In a footnote cited directly after the statement that the bankruptcy court's decision is reviewed under the abuse of discretion standard, the BAP stated that "[t]o some degree, review of this decision is a bit puzzling. . . . [I] the bankruptcy court denies a stay pending appeal, the request may be made anew to the appellate court. Given the ability of a litigant to renew (and argue *de novo*) his or her request for a stay, it is difficult to understand the utility of seeking review of the lower court decision." *Id*. n.31. SMDI argues that *Lang* illustrates that there is a distinction between appealing the bankruptcy court's denial of a motion to stay pending appeal to the district court and bringing a renewed motion under Rule 8005 in the district court that results in a different

applicable standard.  If a party appeals the denial, it is held to an abuse of discretion standard, whereas, if the party brings a renewed motion, it should be entitled to *de novo* review.

The Trustee, however, asserts that reading this distinction into the footnote in *Lang* appears to be contrary to the Tenth Circuit's decision in *Farm Credit Servs. v. Fremont Sheep Corp.*, 110 F.3d 73, 1997 WL 174116 (10th Cir. April 10, 1997), in which the court stated that the denial of a motion for stay pending appeal is reviewed "for an abuse of discretion." *Id.* at *2.  In addition, both the *Fremont Sheep* case and the Trustee cite to other cases applying an abuse of discretion standard.  *See id.* (citing *Aberdeen & Rockfish R.R. v. Students Challenging Regulatory Agency Procedures (SCRAP),* 409 U.S. 1207, 1218 (1972); *Beverly v. United States,* 468 F.2d 732, 740 n.13 (5th Cir. 1972)); *see also Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001); *Ohanian v. Irwin (In re Irwin)*, 338 B.R. 839, 845-47 (E.D. Cal. 2006) ("Among the federal district courts overseen by the Ninth Circuit, the abuse of discretion standard has been explicitly applied several times in deciding motions for stay pending appeal under Bankruptcy Rule 8005.")

The court finds SMDI's attempt to create a distinction between an appeal of the decision and a renewal of the motion unpersuasive.  Based on the language of Rule 8005 requiring the moving party first seek relief from the bankruptcy court and then demonstrate to the district court why the relief was not obtained from the bankruptcy court and the court's review of the cases cited by the parties, the court concludes that the better reasoned approach is to apply an abuse of discretion standard.  While the BAP in *Lang* may have been attempting to highlight a distinction, it did not apply a *de novo* standard and SMDI has not cited to any case applying a *de novo* standard of review.  Even if there was authority applying a *de novo* standard and this court found

it appropriate to apply that standard, the court concludes that under either standard of review, the court would deny a stay in this case.

**II.  Legal Standard for Stay Pending Appeal**

The parties do agree with respect to the applicable legal standard for obtaining a stay pending appeal.  Under this standard, a court considers four factors: (1) whether the party seeking the stay has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *See Nken v. Holder*, 129 S. Ct. 1749, 1756 (2009).  The Court explained that "[t]he first two factors of the traditional standards are the most critical."  *Id.* at 1761.  The moving party bears the burden of establishing these factors in order to show "that the circumstances justify an exercise of the court's discretion."  *Id.* at 1760.

The bankruptcy court addressed each of these factors in its ruling on the record, analyzing the irreparable harm factor first and the likelihood of success on the merits factor last.  Such an approach was appropriate given the court's views regarding the merits of the appeal.  This court, however, finds it appropriate to consider the issues in the traditional order given the importance placed on the first two factors.

*A.  Likelihood of Success on Appeal*

SMDI takes issues with nearly every adverse legal ruling in the bankruptcy court's sixty-four page Memorandum Decision.  The court, however, has reviewed the Memorandum Decision and finds the bankruptcy court's rulings well reasoned and thorough.  SMDI asserts that it is only appealing questions of law that will be given no deference on appeal.  But it fails to consider the

numerous factual findings the bankruptcy court made in applying the legal principles to the case at hand. Those factual findings must be shown to be clearly erroneous on appeal and may be determinative of many of the issues on appeal.  The court finds no basis for SMDI to be able to challenge the court's factual findings.  Moreover, the court finds that many of SMDI's challenges to the bankruptcy court's legal conclusions are flawed.

First, SMDI's standing argument relies on *Retail Marketing Co. v. King (In re Mako)*, 985 F.2d 1052 (10th Cir. 1993), which is factually distinguishable from the present case in several significant aspects.  The court finds nothing in *In re Mako* that would mandate a different result than the result found by the bankruptcy court.  The bankruptcy court correctly analyzed the standing issue and the court finds no basis for SMDI to challenge the court's conclusions on appeal.  The APA, Sale Order, and Joint Plan specifically provided for the continuation of the adversary proceeding, and the estate obtained a prospective economic benefit under the agreements.

Although SMDI claims that the Joint Plan mandated that the Trustee make an election of remedies, such a position is a misreading of the plan's language.  While the Trustee could not accept money damages in lieu of a return of the Domain Name, nothing in the documents prevented the Trustee from pursuing monetary recoveries in addition to the return of the Domain Name.  In fact, these additional monetary recoveries were to be used to pay Class 3 subordinated claims, which remained unpaid, and to repay ConsumerInfo for its funding of litigation expenses.  The prospect of monetary damages that would have benefitted the estate clearly provides standing.  The fact that the bankruptcy court did not ultimately award monetary damages cannot retroactively strip the Trustee of standing to pursue the adversary proceeding.  And, in any event,

the bankruptcy court awarded costs which will be considered a monetary recovery under the APA and Joint Plan.  Moreover, SMDI's standing challenge is a collateral attack on the Sale Order, which SMDI never appealed.  Accordingly, the court finds that this issue does not provide SMDI a likelihood of success on the merits.

SMDI also argues that the turnover count should not have been granted because the Domain Name was of inconsequential value to the estate.  The bankruptcy court's finding that the Domain Name was valuable is a factual finding with ample evidence to support it.  The legal argument on appeal must then focus only on whether the Domain Name is valuable "to the estate."  The Domain Name and its delivery to ConsumerInfo if it prevailed in the Adversary Proceeding was the main basis for ConsumerInfo's willingness to pay approximately $2.1 million under the APA and over $1 million more to date pursuant to the Joint Plan.  This funding allowed all creditors, except for ConsumerInfo's subordinated claims, to be paid in full with interest.  The fact that ConsumerInfo's payment was made prior to Judgment is not sufficient to defeat turnover.  The record demonstrates that the advance payment provided a material benefit to the estate in allowing it to pay most of the creditors.  Moreover, there are still subordinated claims that remain unpaid, and the APA provided a prospective benefit to the estate.

Moreover, SMDI challenges the bankruptcy court's determination on the appropriate burden of proof to apply to the turnover claim.  SMDI claims that the burden of proof should have been clear and convincing evidence instead of a preponderance of the evidence.  SMDI relies on the decision in *Amdura Nat'l Distrib. Corp. v. Amdura Corp., Inc. (In re Amdura Corp.)*, 75 F.3d 1447 (10th Cir. 1996).  But that case involved an attempt to impose a constructive trust on commingled funds.  *Id.* at 1451.  The basis for the turnover count in this case was a

violation of the automatic stay and conversion, which appears to be more properly subject to the preponderance standard under the Supreme Court's decision in *Grogan v. Garner*, 498 U.S. 279, 286 (1991). But, even if the standard was clear and convincing evidence, SMDI has not demonstrated to this court that the heightened standard would have produced a different outcome. Thus, there is no evidence that this issue impacts SMDI's likelihood of success on the merits.

SMDI also argues that the Bankruptcy Code preempts state law conversion claims. SMDI, however, does not cite to any authority for this proposition. The Trustee persuasively asserts that "the Bankruptcy Code was written with the expectation that it would be applied in the context of state law and that federal courts are not licensed to disregard interests created by state law when that course is not clearly required to effectuate federal interests." *Burtch v. Hydraship*, 227 B.R. 244, 253 (Bankr. E.D. Pa. 1998). Without specific authority stating otherwise, this court finds no basis for concluding that state law conversion claims are an invalid alternative theory of recovery in a bankruptcy action.

Furthermore, SMDI's argument that the Domain Name was an executory contract that expired in May, 2006, is without merit. Under this argument, the debtor's rights expired four months after SMDI paid $350,000 for the Domain Name. If the debtor only had the rights to the Domain Name for four more months, that is the interest that was transferred to SMDI. SMDI, however, has operated the Domain Name for years during the pendency of the Adversary Proceeding. More importantly, SMDI never briefed this issue in its trial brief, and the Bankruptcy Court found that it waived the issue under the terms of the Agreed Pretrial Order.

The court concludes that SMDI has not demonstrated any issue on which there is a

likelihood of success on appeal. Accordingly, SMDI has not met its burden on this critical factor.

  *B. Irreparable Harm*

  In response to SMDI's claims of irreparable harm, ConsumerInfo stipulates that it will not transfer the domain name during the pendency of the appeal and it will not raise any potential cybersquatting claims against SMDI. SMDI, however, still contends that it will suffer irreparable harm without a stay because in cases where a judgment orders the transfer of an asset to the prevailing party, it is presumed that the party required to transfer the asset will suffer irreparable harm. *Faysound Ltd v. Falcon Jet Corp.*, 940 F.2d 339, 343 (8th Cir. 1991). But *Faysound* was discussing an exception to the final judgment rule and presumptions allowing an immediate appeal. *See id.* *Faysound* was not addressing whether there is a presumption entitling a party to a stay pending appeal. *See id.*

  Even without such a presumption, SMDI argues that it will be irreparably harmed if it transfers the Domain Name and is unable to reacquire it if it is successful on appeal. If SMDI is successful on appeal, however, ConsumerInfo could return the Domain Name or pay damages. The bankruptcy court found that SMDI could be adequately compensated with monetary damages and thus there was no irreparable harm. SMDI argues that the Domain Name is a special and unique asset and it may not be able to reacquire the Domain Name because ConsumerInfo has already been deemed a good faith purchaser. The bankruptcy court properly found that the fact that an appeal may be rendered moot with the absence of the stay does not itself constitute irreparable harm. *See In re Sunflower Racing, Inc.*, 223 B.R. 222, 225 (D. Kan. 1998). And, although SMDI contends that the Domain Name is a special and unique asset, it has

failed to demonstrate how those attributes affect its damages. The Domain Name is an asset that generates profits. SMDI has not demonstrated why those lost profits cannot be calculated and compensated with money damages. The court, therefore, concludes that SMDI has not met its burden with respect to demonstrating irreparable harm.

*C. Harm to Non-Moving Parties*

SMDI first argues that any harm to ConsumerInfo is irrelevant because the Judgment requires it to transfer the Domain Name to the Trustee. This argument, however, ignores the fact that the agreements provide that upon such transfer, the liquidating trustee will convey the Domain Name to ConsumerInfo in a subsequent closing. Both the Trustee and ConsumerInfo had interests in the adversary proceeding. Accordingly, both are impacted by SMDI's appeal and request for stay pending appeal. The court, therefore, finds the harm to both parties is relevant.

SMDI then argues that there is no harm to the estate because it would receive no additional benefit from the transfer of the Domain Name and there is no harm to ConsumerInfo because it contracted away the right to a conveyance if there was a stay pending appeal. The agreements do not require the Trustee to convey the Domain Name to ConsumerInfo if there is a stay pending appeal. While ConsumerInfo may have agreed to a provision that did not require the Trustee to convey the Domain Name if the court granted a stay pending appeal, it did not stipulate that SMDI was entitled to a stay. The court must still determine whether a stay is appropriate. In addition, nothing in that provision demonstrates a stipulation that ConsumerInfo would not be harmed pending a stay or that it was agreeing to waive its arguments to that effect. The court, therefore, finds it appropriate to consider the harm to SMDI if a stay is granted.

ConsumerInfo has submitted evidence that it will suffer significant financial harm,

approximately $10 million, if a stay is granted. The parties agree that the harm to the nonmoving does not need to be irreparable, only substantial. SMDI's proposals to limit the likely harm to ConsumerInfo have morphed from "parking" the Domain Name, to a no-cost license in the Domain Name, to allowing ConsumerInfo to "hold" the Domain Name in a "trust-type" situation. While SMDI asserts that this final proposal of a trust-type holding of the Domain Name would negate the potential harm to ConsumerInfo, ConsumerInfo contends that it should not be forced into a potentially risky business relationship by the court.

  The court notes that these proposals all appear to acknowledge that ConsumerInfo will, in fact, be harmed. While SMDI offers these proposals in an attempt to limit the harm and thus make the harm less than substantial, there is no authority for the proposition that a party must enter into business relationships to lessen its harm. Similarly, there is no requirement on the court to fashion some ongoing relationship between two parties in order to alleviate the harm to the nonmoving party. The factor for the court to consider is merely whether the nonmoving party will be substantially harmed if the judgment is stayed pending appeal. The court is hesitant to force a business relationship on a party who finds it unacceptable, especially in this context where the nature of the proposal from SMDI is far from clear.

  The court acknowledges that if SMDI's proposal is, in fact, a full grant of all rights to the Domain Name with no strings attached other than an agreement to allow SMDI to possess the Domain Name if it is successful on appeal and if SMDI can post a bond for all of the costs awarded and accruing, most of the harm to ConsumerInfo would appear to be alleviated, but this element alone cannot overcome SMDI's failure to meet the previous two factors.

### D. *Public Interest*

The final factor requires the court to determine where the public interest lies. The bankruptcy court noted that the Judgment deals only with competing ownership claims to the Domain Name rather than the public interest. This court agrees that this matter is between private parties and involves private rights.

To the extent that the bankruptcy court considered other public interests, SMDI contends that the court improperly merged this factor with the merits of the case when it found that the public interest favors conveyance of estate property back to the estate when the property has been transferred in violation of the automatic stay. While that public interest may reflect the court's views of the merits, it is nonetheless a public interest that is implicated by the case. There are also other tangential public interests implicated in this case such as encouraging parties to buy bankruptcy assets, as suggested by the Trustee, and the public interest in exercising appellate rights, as suggested by SMDI. None of these interests, however, override the conclusion that this case mainly deals with private rights. Moreover, this factor does not weigh so heavily in any party's favor as to impact the other factors already considered.

Because the court concludes that SMDI has not met its burden of demonstrating a likelihood of success on appeal or irreparable harm, the court denies the motion to stay pending appeal. The remaining factors do not weigh so heavily in SMDI's favor as to impact its failure to meet its burden on the more critical factors. Accordingly, there is no need for the court to consider what type of bond would be appropriate.

**III. Further Temporary Stay**

In the alternative, SMDI has moved for a temporary stay to be extended so it can apply to the Tenth Circuit for a writ of mandamus. The Tenth Circuit has recognized that a district court's order denying a motion for stay pending appeal is interlocutory and not appealable as of right. *Fremont Sheep Corp.* 1997 WL 174116, at *1. SMDI has already had an opportunity to challenge the Sale Order and Joint Plan in the bankruptcy, and to challenge the Judgment before the bankruptcy court and this court. Given the extraordinary burden it would need to meet to obtain a writ of mandamus, the court denies SMDI's request for a further stay. The Tenth Circuit, however, has discretion to review an interlocutory order. *Id.* And, this court's refusal to extend the temporary stay does not preclude SMDI from attempting to obtain relief from the Tenth Circuit.

## CONCLUSION

For the reasons stated above, the court DENIES SMDI's Emergency Motion for Temporary Stay and Emergency Motion for Stay Pending Appeal pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure. The court concludes that the bankruptcy court did not abuse it discretion in refusing to grant a stay. In addition, even reviewing the issue *de novo*, this court finds no basis for granting a stay. SMDI has failed to meet its burden of demonstrating a likelihood of success on the merits and irreparable harm. Given the opportunities SMDI has already had to challenge these issues, the court concludes a further temporary stay is unwarranted. SMDI, however, may move for a discretionary writ of mandamus in the court of appeals given this court's denial of a stay.

DATED this 16th day of October, 2009.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge